The first case today is 14-1691, Robert E. Murphy v. US Department of Education. Thank you. Mr. Paul, good morning. Good morning. Good morning. May it please the Court, Stephen Paul LeBron Rudnick for the appellant Robert Murphy. I'm going to cover two principal points this morning. The error below in the application of the totality test and why Mr. Murphy is entitled to an undue hardship discharge. Notably, under his facts, he also satisfies the more restrictive letter test. May I, if you don't mind, I'd like, before you get started, to ask you what the practical effect of all of this is. Suppose that this Court affirms and that your client does not get a discharge. As I understand it, his house is underwater but is in foreclosure proceedings. Is that correct? Yes. What's happened to those proceedings? To be honest with you, Your Honor, I don't know what the status is of the foreclosure. I believe that Mr. Murphy is still residing in that home. Okay. Then your client has taken the position that he's essentially judgment-proof. Why would the company that holds these loans have an incentive to go after him to secure payment on the loan until his financial condition improves? I think, Your Honor, your question is on point. And you're probably correct that under the current administrative procedures that the Department of Education and ECMCUs, they would probably wait or they would try to convince Mr. Murphy to take on their ICRP, the Income Contingent Repayment Plan. But I submit to the Court, as our papers say, that that is not the question. Sure, you're right, there are practical circumstances. But the question isn't whether or not the ICRP will save him. It's whether the statute will. I understand your legal argument. So standing there, what adverse circumstances will your client suffer if there is an affirmance? Well, number one, we don't know exactly what the DOE will do. They may offer up an Income Contingent Repayment Plan. Mr. Murphy may not go for that, and they may seek to take actions. Maybe he will get a lower-paying job. Yes, it is in the record now, isn't it, that he said he expected, if he gets through this bankruptcy, that he would get a job in the $30,000 to $40,000 range. Yes, I believe I recall that testimony, and if I could add, I don't think that $30,000 would do anything to enable him to pay $250,000 worth of loans over the period of his remaining earnings life. Okay. And how old is he now, and is there any evidence about the usual retirement age? 65 is his age, and the evidence from the record was that he was going to probably begin to draw Social Security at 66, because he was 62 at trial time. Okay. Thank you. I appreciate your forbearance. Now we'll hear the argument. Thank you, Your Honor. My second point that I will cover, although I will spend less time on that, I imagine that the NCLC will spend some time on that, is should this Court use this case as an opportunity to select a standard, that the totality standard is a better standard. But the district court said, and the bankruptcy court said, that was the standard they were using. And our position, Your Honor, is that that was stated but not actually employed. What the courts did below was employ a standard which was more akin to the more restrictive Brunner test. First error. That tells me that. The close of evidence, the court said, circuit courts of appeal have said that essentially we are looking at mostly health issues in order to find non-dischargeability. Second mistake. In the written decision, I adopt the totality of circumstances test. Okay. District court said the same thing. Yes, and it did so consistent with the bankruptcy appellate panel majority that adopts that test. That's correct. But then went on to say, undue hardship is found only in truly exceptional circumstances. Of course, taking the Q. Quoting us. That's correct. Quoting this Court. So let me address Delbonis, which is the 1995 decision that said truly exceptional circumstances. Number one, the only issue before the Delbonis court was whether a federal credit union is a governmental unit. It was a pure statutory construction case. Undue hardship was mentioned once, and that court took a quote from a 1987 Vermont bankruptcy decision where that court, when it said those words, was focused on the purpose, the original purpose of 523A8, which was the concern about students coming out of school at the beginning of their earnings and trying to get out of Dodge, pull a fast one. That was the concern back in the early 1980s. However, while citing Bronston, the BAP court, for that notion, which was just in a footnote in the back of Bronston, the Bronston court also said, we reject extraordinary circumstances. We reject unique circumstances. And courts within the First Circuit have expressly rejected extraordinary circumstances as part of the totality test. Second issue. So I would suggest from Delbonis, Your Honor, that that's dicta, which is outdated based upon the way the totality test has been adopted. Even if it was dicta and that's debatable, why would it be error for a lower court to take the language which had not been overruled by this court and use it? Let me back up. I thought the language was exceptional circumstances. Yes, that's correct. Truly exceptional circumstances. Why is that error to use that? And even if it were, what does it have to do with this case? There were a number of factors that were considered. None of the opinions below say that that's the single factor that was used. That's right. What the courts did, and I'll start with the bankruptcy court, that court when it mentioned health issues, I believe, colored its review of the factors by the health issue. If you look at the end of the transcript. But every court in the country considers health issues to be pertinent to the analysis. If there is a health issue which results in a preclusion of an ability to work or work full time, that's surely relevant. It's surely relevant, but it's not determinative. No, nor did the court say it was determinative. Well, I think the way the court went through its analysis, the looking at circuit courts mainly look at health issues colored everything else the court did. And on top of that, Your Honor, while truly exceptional circumstances was the language from the 1995 decision, courts of appeal all over the country, including in the Eighth Circuit, have developed this law much, much more. And truly exceptional circumstances doesn't necessarily mean, even as used by the 1995 court, a showing of a certainty of hopelessness. And if you look at. No, this court has never adopted that standard. That's right. And if you look at what both the Bankruptcy Court did and what the District Court did, the Bankruptcy Court looked at Mr. Murphy and said in the early 2000s, at the height of his earnings of $165,000, he was quote, unquote, a high earner. And then went on to say that as part of the testimony, Mr. as part of the ruling, Mr. Murphy never provided evidence that at the time he took out the loan, he wouldn't be able to repay them. That may be true, but that's a non sequitur. Undue hardship is forward-looking. That colored the court's decision. In effect, it said, well, the only thing that he has. Do you want us to rule that no court can consider the circumstances under which the loan was taken out in the undue hardship analysis? Well, that's. That does not seem sensible. Okay, so that's an interesting question. And I recognize that many courts look at this and say, you made a bargain. You took a loan out, and as a result of the laws of the discharge of student loan debts, you may be stuck with that. I get that. And that may be a reasonable factor to consider when someone is in their younger years before they seek a discharge. Here, Your Honor, the fact that Mr. Murphy made $165,000 in his last year of his job in 2002 might be pertinent if we were closer to that time and his earnings back in 2002 were relevant to his situation today. Am I finished? Do you need more time? Because we took some of your time at the beginning. Well, I had a whole host of things that I was going to cover. Well, you can have two more minutes. Okay. Thank you very much. I want to point out at least the way one court looks at it in this jurisdiction, looked at it, and others then looked at it. When you look at the totality test, the three factors, it can be boiled down into the following. Can the debtor now or in the foreseeable future maintain a reasonable, minimal standard of living for the debtor and debtor's dependents and still afford to make payments on the debtor's student loans? I would suggest that if the court below had looked at the three factors, past, present, future financial resources, reasonable and necessary living expenses, other relevant circumstances, and then filtered it through what I just said, the court would have determined that Mr. Murphy was entitled to a discharge. The next thing that we addressed was the ICRP, and I would suggest to your honors that even though the government might come to Mr. Murphy and say, here, sign this up, we're never going to ask you to make a payment, that is not what the statute says. It's inconsistent with the law, and it is, in effect, I don't want to use the word creation, but it's an administrative function of the government that allows that. And to say that the government can simply forbear and then you'll never get a discharge would suggest – The difficulty is that the bankruptcy court said that didn't matter to my decision one way or another. Well, the bankruptcy court in its first decision said, I find this very significant. The district court said that doesn't matter one way or another, but the district court applied what was, in effect, a certainty of hopelessness standard, because what it did – No, how can you say that? Because the district court said that Mr. Murphy hasn't shown at age 62 that his situation is so bleak. That court took that language from a 2004 bankruptcy court decision – I'll just make this final statement – where what you were looking at was a debtor in the mid-30s coming in asking for a discharge, and Judge Feeney said, you don't look so bleak. When you compare that to the facts of Mr. Murphy coming in 13 years of looking for a job, age 62, getting closer to retirement, it's a much more different situation. And so for her to say it's not so bleak, I would suggest is inconsistent with the facts in error. Okay. Thank you. Thank you. Mr. Rao, good morning. Good morning, Your Honors. John Rao for the National Consumer Law Center and the National Association of Consumer Bankruptcy Attorneys as Amicus Parties. Before I begin, I would like to address Judge Lynch's question about the practical effects. In addition to what Mr. Pohl said, I would suggest that there are very few student loan debtors who are judgment-proof. The government has extraordinary collection powers in this area that Congress has granted to them. In fact, they can offset Social Security benefits to recover student loans. So while that would normally be judgment-proof outside of with other debts for student loans, they are recoverable through offsets of tax refunds. Even an earned income tax credit can be offset to recover a student loan. And there's also the possibility of administrative wage garnishments without even going to court. Our Amicus brief provides the citations for those extraordinary powers. If the court decides to provide guidance in this case to the bankruptcy courts in this circuit about what the undue hardship standard should be, we share Mr. Pohl's view and Mr. Murphy's view that the Barnard test should not be adopted. But what we believe the court should, and certainly the totality of circumstances test is clearly preferable, but we think we would hope that the court would take a fresh look at this issue from the perspective of the question that Mr. Pohl just mentioned that was articulated so well by this court's bankruptcy appellate panel in the Braunston case. Many courts have lost sight of that essential question, can the debtor now and in the foreseeable future. Many courts have lost sight of that essential question and added a gloss to the standard that is just not simply found in the words of the statute. Let me ask you, in your totality of the circumstances test, do you consider good faith to be a relevant inquiry? Your Honor, I believe that... Describe for me the content of what you mean by that. I think that there is, as we've said, I think there's very little foundation for that in the statutory language. However, we accept that there could be some level of inquiry about good faith, but it should be limited to the question of whether the debtor is being truly honest about their circumstances, in particular with respect to whether they currently have an inability to repay the loan. So it should go to that honesty about the debtor's current income and expenses and so forth. That should be the limit effectively to the good faith inquiry. We would ask, Your Honors, that perhaps we would hope that the court will say explicitly what the standard is in this case, but perhaps more importantly what the standard is not. And to that end, we would hope that this court, or perhaps the single most significant action this court could take in this case, is to explicitly state that a certainty of hopelessness or a total incapacity or words like that are not required to be shown. And what about truly exceptional circumstances? We do believe that that is very, in a very similar context. And if I can add more flavor to this, we accept that the debtor needs to show additional circumstances that would establish that their condition is likely to persist into the future. That is fine, and it's a forward-looking view. The problem is that by using these words like truly exceptional circumstances and certainty of hopelessness, the lower courts tend to ignore these other factors. The perfect example of this is the Sixth Circuit. In the Euler case, they mentioned other factors that a court can consider, like the fact that the debtor has not completed their education, that they may be effectively stuck in a low-paying job or something like that, or their age, for example, like Mr. Murphy. But then when you look at the actual cases that come out, the truly exceptional circumstances or the certainty of hopelessness dwarfs everything else. But you see, I don't accept that there is an equivalence between those two. In fact, I think they're very far apart. That's fair, Your Honor, but that's where the totality of circumstances allows the trier fact, the judge, to do a balancing as to what these are. The problem is that once the higher court says it's a certainty of hopelessness, there is no balancing that occurs. The difficulty is between what the courts below articulated, which is entirely consistent with your views, and you're coming in and asking us to reject a standard which was not, in fact, used in this case. Your Honor, I'm doing that because at this point the court has not articulated the standard. What about the Seventh Circuit case that the petition for cert is pending in the Supreme Court? Doesn't it put baldly the question of what is the appropriate standard? Yes, Your Honor, it does. I think the chances of cert being granted in that case are slim. Why? While the totality of circumstances test, one of the arguments we make is the totality of circumstances test is clearly preferable, but the way it's been applied, particularly because of this concept of certainty of hopelessness, the ultimate decisions are not that much different. I don't know, and also the differences between these standards, while they are striking in some respects, I'm not sure that the court is perhaps ready to, I can't speculate as to what the Supreme Court would do, but I'm not sure that they're ready to take a case, this issue, at this point. Thank you. Mr. Trampi, good morning. Good morning, Your Honor. Adam Trampi on behalf of Educational Credit Management Corporation. Good morning, and may it please the Court. This is the kind of case, this is the kind of requested discharge that Congress sought to address in adopting the undue hardship standard. There are two facts that drive that, one much more important in this case than the other. The first is that Mr. Murphy took out nearly all of the student loans at issue when he was already unemployed and in his 50s, and then he sought a discharge on the basis of that same unemployment and age just a few years later. Second, and much more importantly for our purposes, the bankruptcy court here found... Didn't he pay part of the loans? I'm sorry? After he took the loans, did he pay $50,000 worth of the loans? Yes, the record reflects that he paid $60,000 worth, Your Honor. Is that something that we should take into consideration? It is something that any court should take into consideration under either test. But here, and more importantly, the bankruptcy court found, as a factual matter, that Murphy hadn't established a total inability to work and repay some further portion of that debt in the future, and the bankruptcy court denied a student loan discharge on the basis of that evidentiary failure. That failure, under this court's precedent in Nash, is dispositive under either test. So this case isn't really about, and doesn't need to be about, which test should have applied, because the facts don't entitle Mr. Murphy to a discharge under either test. As Mr. Rayo said, it's not usually dispositive which test is applied, and this case is a perfect example of that. This case largely mirrors and rehashes the very same question that this court addressed in Nash. There, the underlying record featured a key factual finding that the debtor hadn't established that her present inability to repay would continue into the future. If the debtor filed this petition when he was 65, would you be making the same argument? If the bankruptcy court had made the same factual finding as to the debtor's satisfaction of that burden on future inability to repay, yes, we would, because that fact would be dispositive under either standard. And that's what the court held in Nash. That case came up, and the court took a briefing, and the parties argued about which standard should apply. They argued about whether good faith was relevant and the degree to which good faith was relevant. How much expected work life should we consider? I think that under either test, the bankruptcy court has discretion to evaluate each debtor's circumstances, both under Gruner and under the totality test, to make an assessment of how much additional time the debtor may be able to work. Here, the bankruptcy court looked at Mr. Murphy's health and lack of any health problems, his age, his past employment, and his future employment prospects, and made a factual finding that, as supported by Mr. Murphy's own testimony, that he himself expected to go back to work and make $30,000 to $40,000 a year. And I think that's an important fact to consider in the context of Judge Lynch's question about what's the practical impact of this? What happens if this court affirms and the discharge is denied? What happens is, and recall that Section 523A8 deals not with repayment but debt. Does the lack of a discharge of the debt create an undue hardship? So if the court doesn't discharge that debt, Mr. Murphy's options for dealing with that debt, his best option is to pursue the ICRP, which will prevent any administrative wage garnishments or any other collection actions that the ECMC or the Department of Education could take. And if he doesn't get the $30,000 to $40,000 a year job that he testified he expects, then he'll have to pay nothing. If he does, then all Congress asks, all the Department asks, is that he pay what he can. And his own evidence that he submitted as to what that pay what you can would be, the Department's schedule for the ICRP payment under that $30,000 to $40,000 a year job, assuming that Mr. Murphy and his wife together make around $50,000 AGI, that payment would be $588 a month. Now if he doesn't get a job, he has to pay nothing. But as the bankruptcy court found and he testified, there's a likelihood that he will be able to get a job, that he and his wife will make... So as long as there's an ICRP alternative available, I don't see when there would ever be a discharge. And that's a good point. Our position on that is if the ICRP results in a zero payment and the debtor meets his burden to show that that zero payment would continue in perpetuity, then enrollment in the ICRP would be futile. And there's no reason to subject a debtor to a futility. That's fine. But that's not this case. This case we have a debtor who testified that he expects to make some money. If he paid that $588 a month over the 25-year span, maybe he won't. Maybe he'll go for 15 years and then he'll retire. And then, again, he has to pay nothing at that point. But if he were to pay that over 25 years, that's over $175,000 that gets returned to the Department of Education, that gets returned to the student loan program, and that's the policy here. That's what Congress asks. That's the background for the undue hardship standard, and it's the background for these alternative repayment programs. Part of the quid pro quo is that in exchange for these loans at favorable rates, favorable programs, that you at least commit to pay what you can. It's not even that you pay all of it. But it still seems to wipe out the other policy consideration, which is that bankruptcy means a fresh start, and that's a competing legitimate policy. Absolutely. Absolutely. But even the Supreme Court has held that 523-88 trumps the general fresh start policy implication of bankruptcy. If they can't show undue hardship. Exactly. That's correct. But getting back to Nash for a moment. Can you just tell me? I'm sorry. Go ahead. In addition to the facts that were found by the courts below, what other facts would be required to have undue hardship in his case? The bankruptcy court could have, but it did not find that it was significant, that the circumstances under which these loans were taken up were significant. The policy behind undue hardship would suggest, and the legislative history behind that standard would suggest, that if anything, there's an interest by Congress in preventing discharge of debt in circumstances where the debtor's hardship is self-inflicted. And here where we have somebody who's potentially on the verge of making a decision about retirement and is unemployed and then takes out seven loans in succession over a course of years, up to a hundred and some thousand dollars for his children's education, and then seeks to come back and say, oh, I'm getting up there in years and I'm unemployed, that's a circumstance that ought to be considered by any bankruptcy court as to whether that hardship is undue. But I don't think the court needs to reach that question in this case, because just as in Nash, we had a finding that doesn't even deal with good faith, as to the debtor's future inability to repay, that finding is largely unchallenged. He testified that he expected to make $30,000 or $40,000 a year. And just as the court said in Nash, there's no need to reach the questions of good faith or the question of the test, because under any test that anybody proposes, a court must look into future ability to repay. And we have a factual finding here that establishes that Murphy can't win under either standard. As far as the factual considerations as we get into the test, the test that he's asking for is the test he's got, but he makes these collateral attacks. Excuse me, I have to go back to my question, because I'm not sure I got an answer. I'm sorry. Mr. Murphy contends that he had a net worth of $675,000 in 2001, including a 401k, home equity, and mutual fund savings account, and that he could not have foretold the financial meltdown that occurred in 2008. And that's what caused him to have this problem. Now, what facts, in addition to that, the bankruptcy court found, as far as the fact that he had faced a search for a job and his inability to get one was a credible testimony, and that he's operating a significant monthly deficit. What facts, in addition to these, are required for finding contrary to your position? Let me make sure I understand the question. Is the court asking whether those facts that you've just articulated should be considered in a good faith analysis? He's asking you, if this doesn't constitute undue hardship, what would? Oh, okay. Thank you. That's exactly what I was trying to ask. The difference would be an undue hardship could be shown if Mr. Murphy had established that, by the preponderance of the evidence, that he did have a future likely inability to repay. I believe that my colleagues think that those facts, which are in the record, establish, contrary to the factual conclusion of the bankruptcy court, that he does have a future inability to pay. So why did the bankruptcy court, in the light of those facts, reject it? What evidence supports its rejection? In other words, it sounds more like hopeful pride on the witness stand. And I know that we don't consider this, but he still isn't working. So here the bankruptcy court made a couple of collateral factual findings that are relevant to that ultimate factual finding. The two most important were his lack of any health issues that would prevent him from working, and there was a factual finding that the bankruptcy court found it likely that Mr. Murphy wouldn't be able to increase his income in the short run. So those two we certainly have, but weighing Mr. Murphy's previous history and his lack of any health issues, the bankruptcy court found that, in the long run, there was a likelihood that Mr. Murphy would be able to pay some portion of the debt. That needs to be reviewed for clear air, if anything, just as it was in Nash, and we submit that that factual finding is supported by the testimony and all the other factual findings made by the bankruptcy court. May I ask, if his discharge of the student loans is not approved now, three years from now, one year from now, two years from now, can he come back into the bankruptcy court and say, Circumstances are really different now. I'm older. Yeah, I'd hoped for a job, but I couldn't find one, and I've made diligent efforts, and I'm now eligible for Social Security. I've gotten it. It's been approved, and that's what we're living on. Is he free to do that? I believe the answer to that question is yes, but with the caveat that he would need to file a new bankruptcy, so he needs to, again, subject his. But the answer is yes. I mean, you can file successive undue hardship adversary proceedings if you're filing them in the context of successive bankruptcies. You just can't do it within the same case because, obviously, there's a race judicata involved there. Right, right. Thank you. Thank you, counsel. Mr. Clare, good morning. Good morning, Your Honors. May it please the Court, I'm Jeffrey Clare. I'm counsel for the United States as amicus in this matter. Your Honors, we'd like to focus as amicus on the appropriate standard for construing the undue discharge provisions of the bankruptcy code, and we think there is a substantial agreement as to at least one of the important factors in all the circuits. I don't think any of the circuits disagree that one looks at the debtor's present and immediate ability to repay the loan. I think that's a common fact in both the Bruner test and the totality of circumstances test. Where the Bruner test differs is it has a retrospective component. It looks at whether there's been a good faith effort to make payment in the past, and it has a more prospective component. It asks whether there are additional circumstances indicating that the economic difficulties that prevent payment now are likely to continue for a significant portion of the repayment period of the loan. And we think that both those criteria are important, not only to appropriately construe the undue hardship provision of the bankruptcy code, but to vindicate the policies that underlie that exception for educational loans. If I've understood you, you'd be perfectly happy with the totality of circumstances test, which incorporated these two aspects of Bruner. We would be largely happy, Your Honor. Where we disagree is, for example, in the Eighth Circuit loan case that adopted the test, part of the circumstances the court considered were circumstances that were the sort of overall equitable position of the debtor and didn't bear directly on the debtor's ability to repay the loan. And it's that kind of free-ranging, equitable inquiry that we find objectionable in the totality of circumstances test. It should be focused on, especially as to this first prompt, on whether the debtor can make a reasonable effort to repay. Now, Your Honor has asked some questions about whether the exceptional circumstances standard articulated by this court earlier is really consistent with the certainty of hopelessness language that some of the other courts have used in talking about just how difficult must it be for the debtor to repay in the future. We think the best articulation of this perspective prompt of the test is that there has to be a demonstrated inability to repay over the course of the loan. A certainty of hopelessness seems to inject the kind of element of existential despair that really isn't necessary to get at the core purpose of this kind of test. We're not saying we think those circuits are incorrect, but the language they've used to describe it is a bit too charged for our liking. We think it's a more No, we've never used the language, nor did the courts below us use that language. So what's wrong with our language? Exceptional circumstances would be fine if the court understands that to mean there has to be a demonstrated inability to repay the loan over a significant portion of the repayment period. We think in looking at that question, age should not be in and of itself a dispositive factor. Certainly there are things that may come with age that are relevant. Health conditions, disability, impaired employment prospects, some of those things that unfortunately may be associated with age are certainly relevant. But there's simply no reason to use age as a proxy for that. You can look at those things directly, as the lower court did here. It found that notwithstanding Mr. Murphy's age is a person in good health, with good education, with a good employment record, and substantial employment prospects in the future. Does that continue indefinitely? We don't think the court should be drawing any kind of bright-line rule, Your Honor, as to what is, you know, how old is too old to apply this standard. We think it's an individual kind of inquiry. We note that we've suggested this approach in conjunction with the court's consideration of the income-driven repayment plans that are available from the Department of Education. These are plans that can reduce the debtor's obligation each year to zero if their economic circumstances don't permit them to make payments on the loan and maintain an adequate standard of living. And really the only difference between the kind of discharge that the debtor wants and these repayment plans is that this is the problem with the bankruptcy discharge. It is permanent. Once the debt is discharged, it is gone, and no change in economic circumstances that might occur one year or three years or five years, hence is going to result in any subsequent recovery for the government. Counsel, there's one other provision of the bankruptcy code that uses undue hardship, the reaffirmation. Yes, it is. Is it worthwhile for us to take a look at, is it significantly analogous that we should borrow the standards that's been adopted for the use of that? Well, I don't want to say it's not worthwhile, Your Honor. We think it's not really dispositive of the question here. Well, because the reaffirmation provisions that use this language are tailored for a very different circumstance where a creditor is trying to get a debtor to reassume a debt and reassume the obligations of a debt that is otherwise dischargeable. There's no kind of prior conduct to look at, so there's no retrospective conduct at issue by definition. They concern debts that are presumptively dischargeable rather than debts that are presumptively non-dischargeable. They are provisions that are intended to protect the debtor, not to protect the creditor. Undue hardship is a fairly capacious term that can take on different meanings in different contexts, and what we'd submit the Court should do is look at the objects and policies of this exception in 523AA, which are different than the reaffirmation provisions so that the law there does not apply. So Judge Thompson asked a question earlier, which I do think you have to address. Given the ability to sort of roll over the debt into the new program, is it your position that every time on the facts that is available, that will automatically mean that there is no undue hardship? No, I would adopt Mr. Tramp's response to that question, Your Honor, which is the law does not require an act of futility. If you can demonstrate, if the debtor can demonstrate, that notwithstanding the availability of these repayment plans, there is no reasonable likelihood that there will be any payment for the government. This could be, for example, if the debtor has some sort of disability that precludes any meaningful gainful employment, if the debtor lacks any marketable job skills and has no likely prospect of ever improving those circumstances, those are the sort of things where the court could say, notwithstanding the availability of these plans, the fact that the debtor hasn't applied for them is not going to be an impediment to discharge. But in other circumstances where these repayment plans offer very, very significant relief to the debtor, and all that they require is a showing each year that these circumstances continue, that the interests of the program in most circumstances require that they be used and when some of these discharge provisions were amended, we've quoted Senator Jeffords' remarks on the floor pertaining to those amendments, noting that in virtually every case, these kinds of options are preferable to a bankruptcy discharge, and we think that's appropriate as well. Thank you.